Timothy Mark CANTRELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–76–700.

Court of Criminal Appeals of Oklahoma.

March 9, 1977.

Rehearing Denied April 5, 1977.

As Corrected April 4, 1977.

Mac Oyler, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Timothy Mark Cantrell, hereinafter referred to as defendant, was charged in the District Court, Beckham County, Case No. CRF–77–71, with the offense of Aggravated Assault and Battery Upon a Police Officer, in violation of 21 O.S.1971, § 650. The defendant was tried by jury and convicted of the lesser included offense of Assault and Battery Upon a Police Officer in violation of 21 O.S.1971, § 649. Punishment was set at six (6) months in the County Jail and a fine of Five Hundred ($500.00) Dollars. From said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the facts of this case are as follows. Highway Patrolman Charles Wayne Jones, using a radar device, clocked the defendant at a speed of 65 miles per hour while said defendant was traveling west on I–40 in Beckham County. Patrolman Jones immediately initiated pursuit and defendant pulled over to the side of the highway. The defendant asked why he had been stopped and said that under the wind conditions present that day there was no way he could have been speeding. The defendant was uncooperative and refused to accompany the patrolman to the patrol car.

Patrolman Jones then asked assistance from one Joe Bickerstaff, a civilian, who had been riding in the patrol car with the patrolman. Bickerstaff was reluctant to get involved, but did hand the patrolman his nightstick. The defendant advanced with clenched fists and Patrolman Jones raised his nightstick. The two closed in and Patrolman Jones was subsequently struck by the defendant and rendered momentarily unconscious. When Patrolman Jones regained consciousness, he found that Bickerstaff had joined in the struggle. At this time Jones pulled his revolver and brought the situation under control, but he was in a somewhat confused condition and subsequently required treatment at an emergency room. As a result of the injury, the patrolman spent approximately two days in the hospital.

Patrolman Jones testified that he was trained in the use of Speed Gun II, the radar device with which he detected the defendant's speeding violation. He also

stated that the radar device could be calibrated by the use of a tuning fork or by ground reference using a speedometer, and furthermore, that the device had been calibrated on the day in question.

The defendant testified that he struck the patrolman only in an attempt to prevent harm to his person in the belief that the patrolman was going to strike him without provocation.

The defendant's first and second assignments of error are that the State failed to establish proof of the accuracy and reliability of the radar device upon which the initial arrest of the defendant was based, and further failed to establish proper maintenance and proper operation of the said device. Therefore, the defendant contends, evidence gained by the use of the radar device should not have been admitted into evidence and further, that the offense was not committed in the presence of the officer.

First, concerning admission of the evidence based upon the radar device, the defendant bases his contention upon various cases wherein, upon review, it was found that the evidence lacked sufficient reliability upon which to base a conviction. In the instant case, Patrolman Jones testified to the reliable use of the device in question for a period of approximately six months during which this particular device had been in use. Furthermore, the patrolman testified that he had previously calibrated the radar device with a tuning fork and by ground reference, using his speedometer. The defendant questions the accuracy of the test on the grounds that there was insufficient showing of accuracy of these testing devices. However, this Court need not reach a decision on the accuracy of these testing devices.

The evidence in question was not introduced to show that the defendant was guilty of speeding. Instead, it was introduced to show that an offense was committed by the defendant in the presence of Patrolman Charles Jones on the date in question. The trooper was operating a radar device in compliance with proper procedures and this device which was known by him to be accurate indicated to him that the defendant's truck was exceeding the speed limit. To constitute an offense in the presence of an officer, as is required by 22 O.S.1971, § 196, in order to make a warrantless arrest for a misdemeanor, an officer must "perceive and have knowledge that such offense is being committed." *Thompson v. State,* Okl.Cr., 453 P.2d 314 (1969). Such perception and knowledge was furnished by the radar device, and 47 O.S. Supp.1972, § 16–114, provides that:

"A police officer may, without a warrant, arrest a person for any moving traffic violation of which the arresting officer or another police officer in communication with the arresting officer has sensory or electronic perception including perception by radio, radar and reliable speed-measuring devices."

This statute allows an officer to rely on certain mechanical devices to expand his sensory perception. While the accuracy of such a device may be determinative of a defendant's guilt or innocence, it does not affect the validity of the arrest. Therefore, it is the opinion of this Court that the evidence was properly admitted and that the offense was committed in the presence of the officer.

The defendant's third assignment of error is that 47 O.S.Supp.1974, § 11–801a, is vague and impermissibly attempts to delegate the legislative authority of the State to the executive branch of the State of Oklahoma and to the United States Congress, and therefore is unconstitutional. The statute in question provides as follows:

*"Maximum 55 miles per hour speed limit—Suspension of existing conflicting law.*—No person shall drive a vehicle on a road or highway at a speed in excess of fifty-five (55) miles per hour. This act shall cease to be effective when the federal 'Emergency Highway Energy Conservation Act' (Public law 93–239), or a substantially similar successor law with sanctions, ceases to be in effect; or by proclamation of the Governor that an emergency no longer exists and this maximum speed is no longer warranted; or

by resolution of the Legislature that an emergency no longer exists and this maximum speed is no longer warranted. This act shall suspend but not repeal all other laws in conflict and such laws shall resume their effectiveness when this act ceases to be in effect." (Footnote omitted)

On numerous occasions, this Court has enunciated the proposition that a statute is presumed to be valid and constitutional until conclusively proved otherwise. *Williamson v. State,* Okl.Cr., 463 P.2d 1004 (1969). The substantive portion of 47 O.S. 1971 § 11–901(a), is clearly not vague; the proscribed offense is expressly set out as driving at a speed in excess of 55 miles per hour. Furthermore, the portion of the statute which is being challenged refers to the termination of said statute. The statute in question was properly enacted by the Legislature of Oklahoma. While there may be a question as to whether this statute may terminate as provided therein, in the opinion of this Court, there is no question that said statute is validly in force at the present. In *Ward v. City of Tulsa,* 24 Okl.Cr. 77, 216 P. 173 (1923), this Court indicated that an invalid clause or paragraph in an otherwise valid statute will not invalidate the whole act, where the valid portions are susceptible of reasonable enforcement. Furthermore, in *Postelwait v. State,* 28 Okl.Cr. 17, 228 P. 789 (1924), this Court stated that:

"It is also well settled that a statute may, for constitutional or other reasons, be in part valid and in part invalid; and, if the invalid portion can be eliminated without destroying or impairing the valid portion, the portion that is valid will be upheld and the invalid portion disregarded. . . ." 228 P. at 790–791

Furthermore, this Court does not feel constrained to address the question of constitutionality raised by the defendant, since the substantive portion of the statute would in the opinion of this Court still be in effect regardless of the finding on this question, and therefore the defendant has no standing to challenge the constitutionality of the portion of the statute in question. It is a generally accepted proposition that an accused affected by one portion of a statute may not raise the invalidity of another portion of the same statute which is not applicable to his case, where the invalidity of portion questioned will not render void the entire act or at least some provision that will affect him adversely. *Mauk v. United States,* 88 F.2d 557 (9th Cir. 1937). Therefore, we find the defendant's third assignment of error to be without merit.

The defendant's fourth assignment of error is that the defendant's arrest for speeding was a noncustodial arrest and therefore he was entitled to be released upon his presentation of his driver's license to the patrolman. In light of this proposition the defendant contends that the officer's authority over the defendant terminated when the defendant first gave his driver's license to the patrolman. This Court cannot agree with this proposition.

Clearly, 22 O.S.1971, § 1114.1, applies only to methods of posting bond to assure the appearance of violators. However, in the instant case the patrolman requested the defendant's driver's license as an investigative procedure prior to issuing a traffic citation, and not for the purpose of making bond. A traffic violator is subject to the patrolman's authority and restraint from the moment he is stopped until such time as he is expressly released subsequent to the issuance of the applicable citation.

Furthermore, it is the opinion of this Court that the request by a patrolman that a violator sit in the patrol car during the procedure of issuing a traffic violation is not unreasonable even though the arrest falls short of a custodial arrest.

The defendant's fifth assignment of error concerns the trial court's refusal to instruct upon the right to resist an illegal arrest. It is true that this Court has ruled on numerous occasions that a defendant has a right to have instructions given to the jury which are applicable to his defense. *Woods v. State,* Okl.Cr., 485 P.2d 486 (1971). However, this proposition is valid only

when such defense finds support in the evidence. *Gann v. State,* Okl.Cr., 397 P.2d 686 (1964). Also see, *Woods v. State,* supra. It is apparent from a review of the evidence that the arrest was legal and that, therefore, the trial court properly refused the requested instruction. See, *Potter v. State,* Okl.Cr., 507 P.2d 1282 (1973). We find the defendant's fifth assignment of error to be without merit.

■ The defendant next assigns as error the trial court's failure to quash the information and in failing to sustain his demurrer to the evidence in this case on the grounds that there was insufficient evidence to support a felonious charge of aggravated assault and battery. In *Cox v. State,* Okl.Cr., 361 P.2d 506 (1961), this Court recognized that the term, "great bodily injury" as is required for the offense of aggravated assault and battery is not susceptible of a precise definition. In the instant case, the patrolman was dealt a grievous blow which, by his own testimony, rendered him unconscious and which required his hospitalization. While there was a close question as to aggravation, it was proper to present it to the jury for consideration. Clearly, there was sufficient evidence to support the conviction of defendant on the lesser included misdemeanor offense of assault and battery upon a police officer. The jury convicted defendant of the misdemeanor offense. Therefore, we find the defendant's sixth assignment of error to be without merit.

The defendant's seventh and final assignment of error is that the punishment assessed by the jury was excessive and brought about by the passion and prejudice of the jury as a result of remarks made by the prosecution in opening and closing statements.

■ First, concerning remarks made by the prosecutor in his closing argument, it appears upon a review of the record that the defendant failed to make timely objection. This Court has stated on numerous occasions that if a defendant fails to make timely objection to remarks of the prosecuting attorney in closing argument and re-

quest that the court admonish the jury to disregard such remarks, the defendant has failed to preserve the issue for review on appeal. *McKee v. State,* Okl.Cr., 531 P.2d 343 (1975).

■ Furthermore, while it does appear that the prosecution went beyond the accepted scope of closing argument by referring to the penalty to be requested, we are of the opinion that it was not sufficiently prejudicial to the defendant to merit reversal. In *Woods v. State,* Okl.Cr., 440 P.2d 994 (1968), this Court, citing the ninth paragraph of the Syllabus in *Sparkman v. State,* 67 Okl.Cr. 245, 93 P.2d 1095 (1939), reiterated the proposition that:

"An opening statement is, and purports to be, no more than an outline of the state's theory and the evidence expected to be offered in support. The statement of incompetent or immaterial matter affords no ground for reversal unless it appears that the statement was manifestly prejudicial."

■ Finally, concerning the question of excessiveness of punishment this Court has consistently followed the rule as stated in the fifth paragraph of the Syllabus to *Johnson v. State,* Okl.Cr., 386 P.2d 336 (1963), that:

"The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the court."

Clearly, no substantial right of the defendant was prejudiced since the jury did not return the verdict requested by the prosecution, but in fact convicted on the lesser included offense of assault and battery upon a police officer. Furthermore, while the jury did set punishment at the maximum provided for by law on the lesser included offense, in view of the facts in this case we do not find the sentence to be "so excessive as to shock the conscience of the

court." We find the defendant's final assignment of error to be without merit.

For the above and foregoing reasons, the judgment and sentence of the trial court below is AFFIRMED.

BUSSEY, P. J., and BLISS, J., concur.