Garland Max **FUNKHOUSER**,
Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–84–262.

Court of Criminal Appeals of Oklahoma.

June 25, 1986.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## MEMORANDUM OPINION

BUSSEY, Judge:

The appellant, Garland Max Funkhouser, was convicted in the District Court of Tulsa County, Case No. CRF–83–2847 of one count of the three counts charged in the information of Assault With a Dangerous Weapon, After Former Conviction of Two or More Felonies for which he received a sentence of thirty (30) years' imprisonment, and he appeals. He was acquitted of one count, and the jury was unable to reach a verdict on the third count.

Briefly stated, the facts are that on August 14, 1983, at approximately 12:30 a.m., the appellant came to the Frontier Club located in Tulsa and rang the doorbell. Upon being told by Korina Kay Rutledge, who answered the door at the owner's request, that the club was closed for the night, he tried to force his way inside, but failed. Not long afterward, as the door opened and everyone inside the bar started to leave, appellant came inside and lunged at Ms. Rutledge with a knife telling her she "was a dead bitch." Ms. Rutledge grabbed her husband and caused him to fall whereupon the appellant came at him with the knife. Mr. Rutledge was keeping him away by kicking at him when Edward Harrell came through the door, was hit in the chest with the appellant's empty fist and Harrell struck back, threw him outside where he went down on his hands and knees and began poking the knife at Harrell's legs. Harrell kicked the appellant, causing him to drop the knife and when he stood and followed Harrell, an unidentified man began to chase appellant with a baseball bat stopping when the police appeared shortly thereafter.

The conviction was for the assault upon Ms. Rutledge.

For his first assignment of error, the appellant complains of improper prosecutorial comments which caused the jury to assess excessive punishment. The appellant claims that one of the prosecutor's remarks was beyond the scope of the evidence and that also he made improper statements of law.[1] Having reviewed the comments which were properly preserved by objections, we do not find that they were improper, especially in light of the overwhelming evidence against the appellant. This assignment of error is without merit.

For his second assignment of error, the appellant alleges that the trial court erred in refusing his requested instruction on the lesser included offense of assault and battery. A defendant is entitled to instructions upon lesser included

---

1. The prosecutor made the following comments to which the appellant's attorney objected, and each was overruled.

   (A) Eddie Harrell testified for you. He was the third victim of the Defendant. And what did he tell you? In all the facts and circumstances, I want you to think about this. We are lucky that Eddie Harrell showed up, those victims, Roy and Kaye and maybe the other witnesses are lucky Eddie showed up. (Tr. II, 110)

   (B) Thank you, Your Honor. If the Court please, ladies and gentlemen, I hope that you are not shocked as Mr. Laphen put it in his opening statement about the minimum punishment for Assault With A Dangerous Weapon, After Former Conviction of Two or More Felonies. As citizens of Tulsa County, State of Oklahoma, each and every one of you should realize that if a person is a formerly convicted felon that the punishment is higher. We don't give free crimes in Oklahoma. (Tr. II, 145)

   (C) We've introduced evidence that the Defendant has been convicted of all three of the crimes alleged in the second page of the Information, Garland Max Funkhouser. That evidence, that he is the same Garland Max Funkhouser is uncontradicted. (Tr. II, 145)

   (D) What we do now is ask you to follow the law and the law says that the punishment is not less than twenty years. You have those former convictions. (Tr. II, 146)

   (E) I'd ask that due to the violent nature of the crime, that you've convicted him of, the fact that he is a habitual offender, the fact that one of the former convictions is for a violent crime, that you begin your deliberations, begin your deliberation at not less than thirty years. Three convictions, the law says that with two convictions the minimum punishment is not less than twenty years. This Defendant has three convictions. (Tr. II, 147)

offenses of the subject charged whether or not requested, but only if the evidence so supports. The trial court should not instruct upon any degree of a crime or theory of defense which is not supported by the evidence. *Batie v. State*, 545 P.2d 797 (Okl.Cr.1976), and *Jennings v. State*, 506 P.2d 931 (Okl.Cr.1973). Uncontroverted evidence showed that Ms. Rutledge, the victim in count two of which the appellant was convicted, was attacked with a knife. In light of this fact, the evidence does not merit an instruction upon assault and battery. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr. 1982).

■ For his final assignment of error, the appellant asserts that the trial court committed fundamental error in failing to declare a mistrial when it received a note from the jury indicating their numerical division. An examination of the record shows that the court received a note after the jury had deliberated about two hours giving the number of votes in favor of a guilty verdict and a not guilty verdict on each of the three counts.[2] After calling them back into the courtroom and determining that they could still reach a verdict, he sent them to lunch, and after returning, they reached a verdict on Counts I & II, but were unable to do so on Count III. The appellant cites cases in which the trial court asked for a numerical count as to how the jury stood in their deliberations. We have held that a knowledge of the numerical count can often help a trial court decide whether further instruction or a mistrial is in order, but that it would be improper to ask the jury toward what verdict they were leaning. *Dunford v. State*, 614 P.2d 1115 (Okl.Cr.1980). However, in the case before us, the information was volunteered and the issue is whether or not the trial court improperly influenced the jury by encouraging them to continue their deliberations under the particular facts.[3] From a reading of the record of the court's inquiry of the jury foreman, the answers given, and considering the fact that the jury was leaning toward acquittal in one count, and toward a guilty verdict in two counts so that the jury would have difficul-

2. The note relates that as to Count One, Edward Eugene Harrell, the vote was three guilty, nine not guilty. As to Count Two, Kaye Rutledge, the vote was ten guilty, two not guilty. As to Count Three, George R. Rutledge, the vote was also ten guilty, two not guilty. (Supplementary Record)

3. The transcript reads in pertinent part as follows:

THE COURT: Now, ladies and gentlemen, I have received your written communication to me and I'm not sure what the purpose or intent of it was. Who is the Foreman of the jury?
MR. BETZ: I am, Your Honor.
THE COURT: Mr. Betz, what was the reason or purpose of your note?
MR. BETZ: We seem to be at an impasse.
THE COURT: Well, you've been deliberating approximately two hours at the time I received that note. Do you say you are at an impasse? I know what that word means, I'd rather you maybe give me an indication of what you think that means.
MR. BETZ: We can't come to a unanimous verdict.
THE COURT: Okay. Well, have you been at an impasse for some time?
MR. BETZ: Yes, sir.
THE COURT: Do you think any further deliberation is going to result in arriving at a unanimous verdict on one or more of these counts?
MR. BETZ: I can't say for sure about that.
THE COURT: Have you talked to your fellow jurors about that?
MR. BETZ: Yes, sir.
THE COURT: Do you personally think any more deliberation is going to result in a verdict on any of those counts?
MR. BETZ: I'm not sure, possibly.
THE COURT: I know it's past your lunch period. I don't know whether that's presenting any problem for any of the jurors or not. If it is, we can arrange to have you provided with food. What's the thought about—from you other jurors, do you think further deliberation perhaps after a noon recess for lunch would serve any purpose?
MRS. NOTEWARE: It might help.
THE COURT: All right. I think what we'll do then, let you go back into the deliberation room. I'll call over and see if facilities can be had for you and if so we'll let you be in recess and go over and have some food and come back and resume your deliberations and see whether or not anything can be accomplished. Anybody opposed to that idea? Okay. If you would then retire back to the deliberation room, I'll see if we can make a couple of calls, come back in and have a discussion before we recess. Thank you.

ty inferring the opinion of the court, we hold that the trial court did not improperly influence the jury.

The judgment and sentence is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., concurs in results.