Ronald Keith BOYD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–86–679.

Court of Criminal Appeals of Oklahoma.

June 18, 1992.

Concurring Opinion by Justice Lumpkin
July 7, 1992.

Rehearing Denied Nov. 24, 1992.

E. Melvin Porter, Oklahoma City, Thomas Purcell and Anne M. Moore, Asst. Appellate Public Defenders, Norman, for appellant.

Robert H. Macy, Dist. Atty., Ray Elliott, Asst. Dist. Atty., Robert H. Henry, Atty. Gen., M. Caroline Emerson and Carol Price Dillingham, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Ronald Keith Boyd, appellant, was tried by jury and convicted of First Degree Malice Aforethought Murder (21 O.S.1981, § 701.7) (Count I), and Robbery With Firearms (21 O.S.1981, § 801) (Count II) in Oklahoma County District Court, Case No. CRF–86–218, before the Honorable James L. Gullett, District Judge. The jury found three aggravating circumstances and sentenced appellant respectively to death and fifty (50) years imprisonment. We affirm.

Appellant spent the evening of January 7, 1986, with his friends Byron Gibbs, Joe Jackson, and Lenora Denise Dunn. After spending several hours riding around Oklahoma City in a van, appellant asked Gibbs, the driver, to stop at a convenience store called Tom's Market located at 36th and Kelly. Gibbs complied with the request and Jackson and Dunn got out of the van. Jackson went to use the pay phone and Dunn began talking to appellant about robbing the store. Appellant responded by handing Dunn a revolver. Dunn went into the store and emerged a few moments later carrying the gun and a wad of money.

Dorthy Trimble was the clerk on duty at Tom's Market on January 7, 1986. She testified that at approximately 9:00 p.m. she was robbed by a black female with a gun. After the robbery Ms. Trimble called

the police and gave a description of the robber and the van.

After the robbery the group proceeded east on 36th street to Interstate 35 where appellant urged Gibbs to pull into the parking area of a Phillips 66 station so that he could use the pay phone. Gibbs stopped the van near the pay phones and appellant got out of the van and made a call.

Oklahoma City Police Officers Richard Riggs and Craig Gravel responded to the report of the armed robbery at Tom's Market. The officers were informed that the suspect was a black female who fled the area in a green van. The officers drove on 36th street looking for a van which matched the description. The officers noticed a green van parked at a Phillips 66 station and pulled their police car behind the van to investigate. Officer Gravel approached the rear of the van and saw that the vehicle was occupied by a female and two males. Officer Riggs walked towards appellant who was talking on the telephone. Officer Riggs told appellant to get off the phone and walk toward him. When appellant did not respond, Officer Riggs repeated the command. Appellant dropped the receiver and approached Officer Riggs with his hands concealed in his coat pockets. When Officer Riggs instructed appellant to take his hands out of his pockets, appellant, with his hands still concealed in the pockets of his coat, shot the Officer. The bullet struck Officer Riggs in the abdomen. Appellant then placed the gun against the chest of Officer Riggs and fired a second shot.

Appellant then approached the rear of the van where Officer Gravel was standing. Upon seeing appellant, Officer Gravel ran for the protection of the gasoline pumps. Officer Gravel heard several shots fired as he was running. Simultaneously, the van began to slowly roll out of the parking area with appellant now in front of the van using it for cover. Officer Gravel returned to Officer Riggs and both men shot in the direction of the van. The van rolled across 36th street and stopped after striking a fence. The three persons in the van were arrested at the scene. Appellant fled the area on foot.

Appellant ran to the house he shared with Fred Tubbs. Appellant fled from the house when a police helicopter and patrol cars arrived. The next morning appellant went to the home of Reginald Walker. Appellant told Walker that he wanted to leave town. Appellant admitted to Walker that he had shot a police officer, claiming that he had blanked out and the gun went off and he ran. Additionally, appellant told Walker that he had panicked when the officer approached him because there had been a robbery, he had recently gotten out of jail and that he did not want to be arrested. Appellant was ultimately arrested at Walker's home after police received a tip concerning his location.

### ISSUES RELATING TO GUILT-INNOCENCE

In his first proposition of error, appellant contends that the trial court erred in failing to *sue sponte* instruct the jury on lesser included offenses. Specifically, appellant asserts that the testimony of Reginald Walker supported an instruction on First Degree Manslaughter and Second Degree Murder. Mr. Walker testified during the State's case-in-chief that on the morning after the murder appellant appeared at Walker's house. During the direct examination of Walker the following transpired:

Q: Tell this Court and jury what he told you. What you asked him and what he told you.

A: I asked him what he did. I asked him what happened. And he said he really didn't know. He was scared. That he had panicked at the—

Q: Did he tell you that he had been at 36th and I–35?

A: No. I knew he had been there.

Q: All right. What did he tell you happened there?

A: That the Officer Riggs approached him, and he turned around, and he said he just blacked out. Blacked twice. And he just, you know, the gun went off and another shot went off, and he turned and ran.

Q: Did he tell why he panicked?

A: Yes.

Q: What did he say?

A: He said there had been a robbery and that he had just recently gotten out of jail for some problem that he had had. I don't know if it was with Mr. Riggs or not. And that he was afraid of being arrested.

Q: He didn't want to go back to jail, isn't that what he told you?

A: Yes.

(Tr. III at 623–4).

 The trial court is to instruct the jury on every degree of homicide which the evidence in any reasonable view suggests. *Fowler v. State,* 779 P.2d 580, 585 (Okl.Cr. 1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lee v. State,* 700 P.2d 1017, 1019 (Okl.Cr.1985). A defendant is entitled to an instruction on a lesser included offense only when the evidence presented warrants such an instruction. *Hale v. State,* 750 P.2d 130, 136 (Okl.Cr.1988), *cert. denied,* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Foster v. State,* 714 P.2d 1031, 1039 (Okl.Cr. 1986), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). It is the duty of the trial court to determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser included offense to the jury. *Williams v. State,* 807 P.2d 271, 275 (Okl. Cr.1991); *James v. State,* 736 P.2d 541, 545 (Okl.Cr.1987), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); Because we have held that where the evidence warrants a lesser included offense instruction a defendant is entitled to the same whether requested or not, *Penny v. State,* 765 P.2d 797, 800 (Okl.Cr.1988); *Walton v. State,* 744 P.2d 977, 978 (Okl.Cr.1987); *Funkhouser v. State,* 721 P.2d 423, 424–25 (Okl.Cr.1986), we review appellant's contention despite the fact that defense counsel did not specifically object to the instructions at trial nor did he submit additional instructions to the trial court.

 We find that the above referenced testimony is insufficient to support an instruction on First Degree Manslaughter or Second Degree Murder. To be entitled to a First Degree Manslaughter instruction under 21 O.S.1981, § 711(2), evidence must be presented to support the conclusion that the homicide was perpetrated without a design to effect death by means of a dangerous weapon. While the testimony of Walker may have explained appellant's motive for shooting the Officer, (he did not want to return to jail) it does nothing to bolster the inference that appellant acted without a design to effect death. The State's evidence showed that after appellant shot the Officer the first time, he removed the gun from his coat pocket, placed the barrel against the Officer's chest and fired the weapon a second time. After reviewing the evidence, including the testimony of Mr. Walker, we do not believe that a rational juror could find that the death was not the result of a premeditated design to effect death. Accordingly, we find no abuse of discretion in the trial court's failure to instruct the jury on First Degree Manslaughter.

 Nor do we find that the trial court abused its discretion in failing to give an instruction on Second Degree Murder. To be convicted of murder in the second degree, 21 O.S.1981, § 701.8(1), requires that the jury find that appellant evidenced a depraved mind in disregard for human life. We have held that this statute is applicable where there was no premeditated intent to kill any particular person. *Dennis v. State,* 561 P.2d 88, 94–5 (Okl.Cr.1977). Appellant contends that had the jury received an instruction on Second Degree Murder they could have concluded that appellant's acts were intended to injure and not kill Officer Riggs. We disagree. Premeditation sufficient to constitute murder may be formed in an instant. *Williams,* 807 P.2d at 275; 21 O.S.1981, § 703. The evidence presented at trial does not support the conclusion that appellant acted without any premeditated design to effect death. We have held that where there is no evidence to support a lower degree of the crime charged or lesser included offense, it is not only unnecessary to instruct thereon, the court has no right to ask the jury to consid-

er the issue. *Bennett v. State,* 743 P.2d 1096, 1098 (Okl.Cr.1987); *James,* 736 P.2d at 545; *Hill v. State,* 672 P.2d 308, 312 (Okl.Cr.1983), *cert. denied,* 465 U.S. 1106, 104 S.Ct. 1609, 80 L.Ed.2d 138 (1984). Accordingly, we find no error.

■ In his second proposition of error, appellant contends that the trial court erred in allowing evidence of other crimes to be presented to the jury. During the first stage closing arguments the prosecutor argued that appellant attempted to kill Officer Gravel. Appellant contends that these comments constitute evidence of other crimes and that defense counsel's objections to the same should have been sustained. Initially we note that defense counsel objected to the comments claiming that they were prejudicial and lacked evidentiary support. (Tr. V 887, 888). On appeal, appellant shifts the basis for the objection to evidence of other crimes. When a specific objection is made at trial to the admission of evidence, no different objection will be considered on appeal. *Tyler v. State,* 777 P.2d 1352, 1355 (Okl.Cr.1989); *Patterson v. State,* 735 P.2d 338, 341 (Okl.Cr. 1987); *Bennett v. State,* 652 P.2d 1237, 1241 (Okl.Cr.1982); 12 O.S.1981, § 2104(A)(1). Furthermore, this Court has long held that both counsel are entitled to make reasonable arguments relative to the evidence offered and draw reasonable inferences therefrom. *Fitchen v. State,* 738 P.2d 177, 179 (Okl.Cr.1987). We find no error.

## ISSUES RELATING TO PUNISHMENT

In support of its request that the death penalty be imposed, the State alleged the existence of three aggravating circumstances: (1) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; (2) the existence of the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) the victim of the murder was a peace officer and such person was killed while in performance of official duty. *See* 21 O.S.1981, § 701.12(5), (7), & (8). The jury found that each of

these aggravating circumstances were present. (O.R. 167).

During the second stage of the trial, the State recalled Joe Jackson. Jackson testified that in October, 1985, appellant told him that appellant had robbed several businesses in Oklahoma City including Sammy's Pizza, Tom's Market, Kentucky Fried Chicken and King Gas and Oil Truck Stop. The State then called an employee from each of the above named businesses. These employees testified that they had each been robbed by a black man wearing a mask.

The State then called Officer Mike Schoenberger. The officer testified that he had arrested appellant on two occasions. On the first occasion, appellant was sitting in a car with a loaded gun under his leg when the officer approached. The next time the officer contacted appellant was following an armed robbery. Appellant was driving a suspect vehicle and was pulled over by Officer Schoenberger. A pistol was found in appellant's waistband following a pat-down search.

■ As part of his second proposition of error, appellant asserts that the prosecution used evidence that he intended to shoot Officer Gravel in the punishment stage to support the continuing threat aggravating circumstance without giving notice as required by 21 O.S.1981, § 701.10. This Court addressed a similar contention in *Johnson v. State,* 731 P.2d 993 (Okl.Cr. 1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), where we held:

The purpose of the pretrial notice requirement is to apprise the defendant of evidence relevant to sentencing which will be introduced for the first time in the sentencing hearing. That purpose is not served by requiring pretrial notice of evidence relevant both to guilt and punishment and thus admissible in both stages.

*Id.* at 1004. Accordingly, this proposition of error is denied.

■ Appellant contends that prosecutorial misconduct during closing arguments denied him of a fair trial. Most of the

comments set forth by appellant are reasonable comments on the evidence and as such do not constitute error. *Allen v. State*, 734 P.2d 1304, 1308 (Okl.Cr.1987). Many of the remaining comments appellant now cites as error were not objected to at trial and therefore will be reviewed only for fundamental error. *Huntley v. State*, 750 P.2d 1134, 1136 (Okl.Cr.1988). One comment, although not objected to at trial, warrants further discussion. During second stage closing arguments, the prosecutor, Mr. Macy, told the jury:

> So we ask you to make a tough decision. Before you could make that decision, Ray Elliott and I had to put together the evidence here before you upon which you can make that decision. Before we could do that, the District Attorney of this county had to make a decision that we would come in the courtroom to seek the death penalty.
>
> Before I could do that, Bob Horn and the Oklahoma City Police Department had to lay the evidence on my desk that said this is a death case.

(Tr. V 985). While this Court does not condone comments which may leave the jury with the impression that the ultimate decision to impose the death sentence rests elsewhere, *see, Parks v. Brown*, 860 F.2d 1545 (10th Cir.1988), *reversed on other grounds, sub nom., Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), we find no such error in this case. The prosecutor goes on to explain that only appellant entered the case voluntarily, not the prosecutors, the police, or the jury. Read in context, we find that the prosecutor is commenting upon the strength of the evidence and conclude that there is no reasonable probability that the comments lead the jury to believe that the responsibility for the death sentence rested elsewhere.

Furthermore, with respect to the above referenced comments we also reject the notion that the jury, which was instructed that closing arguments are not evidence, could have perceived the comments as the prosecutor's personal endorsement for the death penalty. After reviewing the comments appellant sets forth as error, we cannot find that they determined the verdict or affected the sentence. *See* 20 O.S. 1981, § 3001.1. Therefore, reversal or modification is not warranted.

██ Appellant contends that the trial court erred by refusing to specifically instruct the jury on the mitigating circumstance that appellant had never been previously convicted of a violent crime. Although defense counsel orally requested such an instruction, he failed to submit written instructions to the trial court and has therefore waived all but fundamental error. *Perry v. State*, 764 P.2d 892, 899 (Okl.Cr.1988). Furthermore, evidence concerning appellant's previous criminal record, or lack thereof, was never introduced at trial. Because there was no evidence to support the requested instruction, the trial court's refusal to give the same was not error. *Farris v. State*, 670 P.2d 995, 998 (Okl.Cr.1983). We note that the jury was instructed as to the definition of mitigating evidence and that the determination of what constitutes mitigating evidence was for the jury to decide. (O.R. 132). Further, the jury was instructed to consider any mitigating circumstances which applied to the facts of the case and specifically informed that "you are not limited in your consideration to these minimum mitigating circumstances. You may consider any additional mitigating circumstances, if any, you find from the evidence in this case." (O.R. 133). The instructions accurately stated the applicable law. We find no fundamental error.

During the second stage of the trial defense counsel, in an apparent attempt to impeach the testimony of Officer Schoenberger, called the attorneys prosecuting the case, Ray Elliott and Robert Macy, to the stand. The trial judge would not allow either attorney to testify, a decision appellant now cites as error. Defense counsel made an offer of proof claiming that the testimony sought would prove that no charges were ever filed against appellant as a result of the contacts with Officer Schoenberger.

██ This Court has held that the role of advocate and witness should be kept

separate, and an advocate should be called as a witness only in circumstances of the utmost necessity. *Cavaness v. State*, 581 P.2d 475, (Okl.Cr.1978), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1024, 59 L.Ed.2d 76 (1979); *See also, Oklahoma Rules of Professional Conduct*, Rule 3.7(a), 5 O.S.Supp. 1989, App. 3–A. Appellant has failed to establish that it was necessary to call the prosecuting attorneys to obtain the information sought. Under the facts of this case, we are in full agreement with the trial judge who, in refusing defense counsel's request, stated: "I don't think you have the authority to call the Assistant District Attorney or the District Attorney who is trying the matter. You can call one of the Assistant District Attorneys who is not involved in this case." (Tr. V 948). In fact, the defense could have called any employee from the District Attorney's Office who was privy to the information sought and authorized to reveal it. This assignment of error is denied.

 Appellant contends that the prosecution's use of unadjudicated crimes to support the continuing threat aggravating circumstance was not supported by reliable evidence and, as a result, his Due Process rights were violated. Specifically, appellant alleges that the testimony of Joe Jackson was hearsay and, because Jackson was testifying in exchange for leniency, the testimony was unreliable. We do not reach the determination of whether Jackson's testimony was inadmissible hearsay because appellant failed to object on these grounds at trial. *Ward v. State*, 710 P.2d 766, 767 (Okl.Cr.1985). Concerning the allegation that Jackson's testimony was unreliable, we note that the arrangement to secure his testimony was brought to the attention of the jury by both the prosecution and defense counsel. The jury was informed that to secure Jackson's testimony, the State agreed to dismiss a pending charge of Unauthorized Use of a Motor Vehicle, After Former Conviction of Two (2) or More Felonies, and further agreed not to file any charges relating to the occurrences of Jan-

uary 7, 1986. So long as the jury was aware of the "deal," they could consider it in assessing Jackson's credibility. *See Gray v. State*, 585 P.2d 357, 359 (Okl.Cr. 1978). Accordingly, appellant was not denied due process of law. *See Burnett v. State*, 760 P.2d 825, 829 (Okl.Cr.1988); *Runnels v. State*, 562 P.2d 932, 936 (Okl. Cr.1977), *cert. denied*, 434 U.S. 893, 98 S.Ct. 270, 54 L.Ed.2d 179 (1977).

In his eighth assignment of error, appellant asserts that the continuing threat aggravating circumstance is being interpreted in an unconstitutionally broad manner. We have rejected similar contentions that this aggravating circumstance is being applied in an arbitrary or vague fashion, and we are not persuaded to the contrary by appellant's assertions here. *See Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Fisher v. State*, 736 P.2d 1003, 1010 (Okl.Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *VanWoundenberg v. State*, 720 P.2d 328, 336 (Okl.Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).[1]

 Appellant further alleges that the aggravating circumstances concerning heinous, atrocious or cruel (21 O.S.1981, § 701.12(4)) and creating a great risk of death to more than one person (21 O.S. 1981, § 701.12(2)) are overly broad. Appellant acknowledges that neither of these aggravating circumstances were alleged by the prosecution or found by the jury, but contends that under *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), "even those aggravating circumstances which were not alleged in the present case are relevant to a determination of whether the Oklahoma Death Penalty Statute is unconstitutionally overbroad." (Appellant's Brief at 40). We disagree with appellant's interpretation of *Gregg* and find

---

1. While this writer is "not presently prepared to abandon my opinion regarding the validity of the 'continuing threat' circumstance, I agree

with appellant that more definitive guidance is needed." *Boltz v. State*, 806 P.2d 1117, 1126 (Okl.Cr.1991) (Parks, P.J., specially concurring).

that because the aggravating circumstances were not alleged, appellant lacks standing to attack their constitutional validity. *See Little v. State*, 725 P.2d 606, 608 (Okl.Cr.1986); *Thomas v. State*, 675 P.2d 1016, 1022 (Okl.Cr.1984), *cert. denied*, 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 469 (1984); *Cantrell v. State*, 561 P.2d 973, 976 (Okl.Cr.1977).

■ Appellant next asserts that the trial court's failure to define specifically the elements of the aggravating circumstance "the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution" constitutes fundamental error. We have previously found that the aggravating circumstances listed in 21 O.S.1981, § 701.12, are specific and readily understandable. *Chaney v. State*, 612 P.2d 269, 279 (Okl.Cr.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), *rev'd on other grounds, Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984), *cert. denied*, 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984). Furthermore, the instruction concerning this aggravating circumstance (O.R. 129) mimics the statutory language set forth in section 701.12(5). An instruction is sufficient when given in the substantial language of the statutes. *Smith v. State*, 727 P.2d 1366, 1373 (Okl.Cr.1986), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 780 (1987). Accordingly this assignment of error is denied.

■ Next, appellant asserts that the trial court should have specifically defined the elements comprising the "continuing threat" aggravating circumstance. Initially, we note that appellant failed to request such an instruction at trial and has therefore waived all but fundamental error. *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). We have previously addressed this identical proposition of error and held that this aggravating circumstance is specific, not vague and is readily understandable without further definition. *Boltz v. State*, 806 P.2d 1117, 1125 (Okl.Cr.1991); *Fox v. State*, 779 P.2d 562, 576–77 (Okl.Cr.1989), *cert. denied*, 494 U.S.

1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Fisher*, 736 P.2d at 1010; *Van-Woundenberg*, 720 P.2d at 336; *Liles*, 702 P.2d at 1031. We are unpersuaded by appellant's arguments to the contrary.

Next, appellant submits that the trial court erred by failing to instruct the jury that if it could not reach a unanimous verdict in the sentencing phase of the trial, the court would impose a life sentence. *See* 21 O.S.1981, § 701.11. This Court has on numerous occasions considered and rejected this identical argument, holding that such an instruction would amount to an invitation to the jury to avoid their unpleasant task. *Hale*, 750 P.2d at 139–40; *Smith v. State*, 737 P.2d 1206, 1216 (Okl.Cr.1987), *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Brogie v. State*, 695 P.2d 538, 547 (Okl.Cr.1985). This proposition is meritless.

Appellant next asserts that the trial court erred by failing to instruct the jury that the need for the death penalty as a whole must be proved beyond a reasonable doubt. Appellant recognizes that the jury was instructed that the aggravating circumstances alleged required proof beyond a reasonable doubt before the jury was authorized to consider the death penalty. However, appellant alleges that without additional instruction requiring that the need for the death penalty be demonstrated by proof beyond a reasonable doubt, the jury's decision could not be properly channeled. The premise of appellant's argument is the belief that, in the absence of further instruction, the jury could not find the presence of one or more aggravating circumstances and yet determine that death was an inappropriate sentence. Appellant fails to cite specific relevant authority in support of this argument and our research discloses none. However, a review of the record reveals that during the second stage the jury was instructed:

If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

(O.R. 131). *See also Oklahoma Uniform Jury Instruction–Criminal* (OUJI–CR) 440. Guided by this instruction, the potential existed for the jury to find the presence of one or more aggravating circumstances and not return a sentence of death. Furthermore, the jury was not instructed that they must assess death if aggravating circumstances were found which were not outweighed by mitigating circumstances. Rather, they were instructed that they "could be authorized to consider imposing a sentence of death." (O.R. 130). We find that the instructions given were comprehensive, accurately stated the applicable law and properly channeled the sentencer's discretion. Therefore, we reject this proposition.

Appellant contends that the trial court erred in failing to give a "presumption of life" instruction. Appellant has waived all but fundamental error by failing to request such an instruction at trial. *Lay v. State*, 752 P.2d 823, 825 (Okl.Cr.1988). We rejected an identical proposition of error in *Fox*, 779 P.2d at 574, and appellant's arguments do not convince us to do otherwise here.

In a supplemental brief, appellant contends that his right to an individualized sentencing proceeding and meaningful appellate review were denied by several instructions issued in the second stage. Appellant bases his argument on *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), which held that the Eight Amendment is violated where jury instructions and verdict forms may lead a juror to believe that he can only consider those mitigating circumstances unanimously found to exist. *Mills* requires the reviewing court to reverse the sentencing decision only if there exists the "substantial possibility" that a reasonable juror construed the instructions in an improper manner. *Id.* at 377, 108 S.Ct. at 1867.

Appellant first attacks the "anti-sympathy" instruction which was given in the first stage (O.R. 121) and later incorporated into the second stage of the proceedings.

(O.R. 136). Appellant alleges that the instruction is violative of *Mills* for the reasons set forth in *Parks v. Brown*, supra. The relevant instructions given in the instant case are identical to those given in *Fox v. State*, 779 P.2d 562 (Okl.Cr.1989). We therefore reject this proposition for the same reasons expressed in *Fox*. *Id.* at 574–75.[2]

Next, appellant asserts that OUJI–CR 440, infra., is confusing and reasonably capable of unconstitutional interpretation. Specifically, appellant complains that this instruction authorizes the death penalty even where mitigating circumstances outweigh aggravating. We do not understand appellant's reasoning. Applying the *Mills* analysis, we find no substantial possibility that a reasonable juror could interpret the instruction as appellant does. Therefore, this assignment of error is denied.

Next, appellant alleges that by not requiring the jury to reduce to writing any mitigating circumstances found (*See* OUJI–CR 441; O.R. 134) he is denied meaningful appellate review. Appellant fails to cite any authority in support of this proposition. Therefore it will not be considered. *Van-Woundenberg*, 720 P.2d at 335.

Finally, appellant claims that relevant mitigating evidence was barred from the jury's consideration by OUJI–CR 438 which provides in pertinent part:

In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only the evidence received here in open court presented by the State and the defendant during the sentencing phase of this proceeding.

(O.R. 136). Appellant contends that this instruction precluded the jury from considering mitigating evidence presented in the first stage of the trial. We disagree. All evidence introduced in the trial's first stage was incorporated into the punishment stage. (Tr. V 947). The transcript is replete with instances, by both the prosecu-

---

**2.** It continues to be the opinion of this writer "that the use of an 'anti-sympathy' instruction in the second stage, where mitigating evidence has been introduced, improperly undermines the jury's consideration of mitigating evidence in violation of the Eight Amendment." *Fox*, 779 P.2d at 579 (Parks, P.J., concurring in part/dissenting in part). However, I yield to the majority view as a matter of *stare decisis*.

tion and the defense, where first stage evidence was argued during the second stage and at one point the jury is specifically reminded that "you may apply all of the evidence and testimony that you heard in the first stage of this proceeding to your decision in this stage of the proceeding." (Tr. V 963). Nothing in the challenged instruction limited the jury's ability to consider mitigating evidence. *Cf. Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Furthermore the jury was instructed that, "[t]he determination of what are mitigating circumstances is for you as jurors to resolve ..." (O.R. 132) and that "[y]ou may consider any additional mitigating circumstance, if any, you find from the evidence in this case. What are and what are not additional mitigating circumstances are for you the jury to determine." (O.R. 133). In light of the above, we find no "substantial possibility" that a rational juror could have interpreted the instruction in an improper manner and therefore reject this proposition of error.

## ISSUES RELATING TO EFFECTIVE ASSISTANCE OF COUNSEL

In his third proposition of error, appellant alleges that he was denied the effective assistance of counsel during both stages of the trial. To prevail on this claim, appellant must demonstrate that his counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. In addition, if it is easier to dispose of an ineffectiveness claim on the lack of sufficient prejudice, that course should be followed. *Id.* at 696, 104 S.Ct. at 2070.

Initially, appellant sets forth four separate areas, relevant to the first stage of the proceedings, in which he claims his counsel's performance was deficient. First, appellant asserts that defense counsel failed to adequately investigate and prepare for trial. To support this contention, appellant points to the fact that defense counsel filed no pretrial motions and specifically failed to file a *Brady*[3] motion. While we agree with the basic premise of appellant's argument, that inadequate pretrial investigation and preparation can result in ineffective assistance, *see Fisher,* 736 P.2d at 1013, we decline to do so here. Concerning the failure to file a *Brady* motion, appellant admits that "it is impossible to show what prejudice resulted from not filing a *Brady* motion." (Appellant's Brief at 19). Furthermore, a review of the record indicates that it is extremely unlikely that appellant was prejudiced by the absence of a *Brady* motion as defense counsel acknowledged that the prosecution provided a full and complete copy of the State's file. (Tr. V 1000-1). Appellant is not specific about any additional pretrial motions he claims should have been filed by defense counsel. Nor, apart from the bald assertion concerning "[t]he lack of any pretrial investigation by defense counsel," (Appellant's Brief at 19) does appellant describe what investigatory steps should have been taken or the evidence that would have been derived therefrom.[4] Without this information we cannot conclude that appellant suffered any prejudice. *See Fisher,* 736 P.2d at 1013.

Appellant next contends that defense counsel interjected evidence of other crimes during the cross-examination of State's witness Joe Jackson. During cross-examination, defense counsel asked Jackson the following: "Now, you also told the police that you—that Ronald Boyd told you that he had talked to somebody by the name of Reggie about some cocaine deal."

**3.** *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**4.** In a Motion for Remanded Evidentiary Hearing, appellant continues to make assertions, unsupported by the record, affidavits or any documentation, concerning evidence allegedly available to defense counsel which would be presented at an evidentiary hearing if this Court granted the same. We find these assertions insufficient to warrant an evidentiary hearing. Appellant's motion is hereby denied.

(Tr. III 689–90). After the witness responded "yes," the line of questioning was dropped. We fail to see how this isolated exchange implicated appellant in a crime. Assuming *arguendo* that defense counsel erred in opening the door to this evidence, we cannot find that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Carol v. State*, 756 P.2d 614, 619 (Okl.Cr. 1988).

■■■ Next, appellant alleges that defense counsel's failure to have appellant's statements to police suppressed is evidence of ineffective assistance. Appellant contends that defense counsel should have attempted to suppress the statements because they were "Arguably the Result of a Beating Inflicted on Mr. Boyd by the Police." (Appellant's Brief at 20). To support this assertion, appellant relies on the testimony of State's witnesses Officer Bob Horn and Reginald Walker. Officer Horn questioned appellant shortly after his arrest and admitted during cross-examination that an atmosphere of hostility and anger existed at the Police Department on the day appellant was arrested. (Tr. IV 802). Further, Officer Horn testified that he saw "scuff marks" on appellant's face. (Tr. IV 805–6). During the prosecutor's direct examination of Walker, the following transpired:

Q: Are these pictures of Ronald Boyd?
A: Yes.
Q: Do they truly and accurately depict the way he looked, the way he was dressed the morning he came to your house, the morning of January 8th?
A: No.
Q: What is different?
A: He wasn't beaten like that. He didn't look that way.

(Tr. III 621).

Based on the above testimony, appellant urges this Court to find defense counsel ineffective for failing to attempt to have appellant's statements suppressed. To so

find, we would have to conclude that the Motion to Suppress would have been properly granted by the trial court. The testimony of Officer Horn, viewed as a whole, does not support the contention that appellant's statements were involuntary, much less the result of physical abuse or intimidation. Officer Horn testified that he read appellant his constitutional rights after which appellant agreed to talk with the officers. (Tr. Iv 795). Officer Horn testified that he did not threaten nor did anyone else threaten appellant in his presence. (Tr. IV 798, 801). The Officer denied yelling at, "browbeating," or attempting to scare appellant. (Tr. IV 798, 804). The record is simply void of any evidence that appellant was physically abused by the police or that such abuse lead to appellant's statements to police.[5] Because we cannot find that the trial court could have properly granted a Motion to Suppress appellant's statements to police, appellant has failed to show the requisite prejudice and we will not label defense counsel ineffective for not filing the same.

■■■ Appellant next cites counsel's failure to request instructions on First Degree Manslaughter and Second Degree Murder. We have previously discussed the applicability of these instructions and determined that they were not supported by the evidence. (*See* Proposition I). The failure to request instructions which are not supported by the evidence is not ineffective assistance.

■■■ Appellant further contends that defense counsel's errors and omissions during the second stage of the trial constituted ineffective assistance. Initially, appellant asserts that defense counsel failed to properly impeach State's witnesses Joe Jackson and Officer Mike Schoenberger. The record reveals a vigorous attempt on the part of defense counsel to test the credibility of these witnesses. We find that the manner employed to impeach witnesses is a tactical decision. Representation will not be deemed inadequate because in hindsight

---

**5.** In an affidavit filed in this Court, appellant claims that officers beat him prior to questioning and that defense counsel was aware of this fact prior to trial. Despite the affidavit, we remain unconvinced that a Motion to Suppress

would have been successful. Nor can we conclude that defense counsel's decision not to file the same constitutes deficient performance. Accordingly, appellant has failed to meet either prong of *Strickland.*

trial strategy could have been different. *Stover v. State*, 674 P.2d 566, 568 (Okl.Cr. 1984). Therefore, we will not find defense counsel ineffective because his attempts at impeachment were unsuccessful or because another attorney would have chosen a different avenue of impeachment.

▇ Finally, appellant alleges that defense counsel failed to present mitigating evidence. Specifically appellant cites that no evidence was introduced to establish that appellant had no previous felony convictions and no witnesses were called to testify on appellant's behalf. Appellant has submitted the affidavit's of numerous people vouching for his character, stating that they were never contacted by defense counsel and that they would have testified if they would have been so contacted. (*See* Appellant's Motion To Supplement). This Court has steadfastly refused to apply a *per se* rule that the failure to present mitigating evidence in the second stage of a capital case constitutes ineffective assistance of counsel. *Fisher*, 736 P.2d at 1014; *Coleman v. State*, 693 P.2d 4, 7 (Okl.Cr. 1984). Having reviewed these arguments, and affidavits of individuals stating what they would have testified had they been called, we hold that appellant has failed to establish that, absent defense counsel's conduct in the sentencing stage, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2096.

### MANDATORY SENTENCE REVIEW

▇ Pursuant to 21 O.S.Supp.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance. *See Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988).

Having reviewed the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1991, § 701.-13(C)(1).

We find that the evidence indicating that appellant shot the officer because he had outstanding tickets and did not want to be arrested sufficient to support the jury's finding that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1981, § 701.12(5).

We find the evidence introduced during the second stage of the trial concerning appellant's previous armed robberies and the testimony of Officer Schoenberger concerning appellant's attempts to resist arrest sufficient to support the jury's finding that appellant would constitute a continuing threat to society. 21 O.S.1981, § 701.-12(7).

Finally, we find sufficient evidence was introduced to support the jury's finding that the victim of the murder was a peace officer killed in the line of duty. 21 O.S. 1981, § 701.12(8).

For the foregoing reasons, the Judgment and Sentence is AFFIRMED.

LANE, P.J., and BRETT and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in result.

LUMPKIN, Vice–Presiding Judge: concurs in results.

I concur in the results reached by the Court in this case. However, I cannot join in the Court's broad comment regarding the method of proof that no charges were filed as a result of Appellant's contacts with Officer Schoenberger or the Court's implication that a *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), analysis is required in this case.

The Court's comment regarding the available method of proof that charges were not filed as a result of the contacts with Officer Schoenberger does not recognize the restrictions placed on this type of evidence by 12 O.S.1981, § 2803. Therefore, the comment should not be read to amend the statutory requirements of admissibility.

The Court's discussion of the supplemental proposition regarding the need for a *Mills* analysis infers that this type of review is required. However, it should be noted that *Mills* is not applicable to the

Oklahoma capital sentencing procedure. The Maryland sentencing procedure is distinctly different from the procedure applied in Oklahoma. Therefore, the Court should refrain from creating either a misconception that *Mills* addresses the sentencing procedure utilized in Oklahoma or an additional nuance of legal fiction to confuse our criminal jurisprudence.