**Gary Alan WALKER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–85–373.

Court of Criminal Appeals of Oklahoma.

July 2, 1990.

As Corrected July 9, 1990.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge.

Appellant, Gary Alan Walker, was found guilty of Murder in the First Degree (Count I) in violation of 21 O.S.Supp.1982 § 701.7, and Kidnapping (Count II) in violation of 21 O.S.1981, § 745, after Former Conviction of a Felony, in Rogers County District Court, Case No. CRF-84-108. The jury found appellant guilty on both counts. Upon the jury's finding that aggravating circumstances existed, appellant was sentenced to death on Count I.[1] He was sentenced to one hundred and ten (110) years imprisonment on Count II. From this judgement and sentence the appellant has perfected his appeal to this Court.

On the evening of May 24, 1984, Valerie Shaw-Hartzell was accosted by appellant in a shopping center parking lot. Her body was later found in a rural area near Claremore in Rogers County. Appellant was subsequently arrested in Tulsa County by Tulsa municipal police at about 11:00 p.m. on June 2, 1984. His first interrogation occurred from about 1:00—1:50 a.m. on June 3, 1984. Prior to this interrogation, appellant was read his *Miranda* rights. He specifically indicated that he did not want a lawyer. During this interrogation, he confessed to having abducted and killed Ms. Hartzell. He also told the Tulsa Coun-

---

1. The jury found that two aggravating circumstances existed: 1) The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, and 2) the defendant presented a continuing threat to society.

ty authorities that he would talk to them again the next morning and take them to the location of Ms. Hartzell's body.

The following morning at 9:00 a.m., appellant was checked out of the Tulsa County Jail for further interrogation. Once again, he was advised of his *Miranda* rights and he declined to request an attorney. As agreed, appellant proceeded to take the Tulsa police to the body. Because the body was near Claremore in Rogers County, authorities from Rogers County accompanied them to the location. Appellant was subsequently returned to the Tulsa County Jail.

On June 6, 1984, a Tulsa County Public Defender, Pete Silva, was appointed to represent the appellant. He counseled the appellant for approximately an hour and a half on June 6 and for two hours on June 7. Mr. Silva testified that he informed the appellant that he would be present at any future interviews with the authorities and that the appellant would be warned of any attempts to move him. Mr. Silva also testified that he had made an agreement with Mr. Gillard, the Assistant District Attorney in Tulsa County, to the effect that appellant would have counsel present before any further questioning. On June 7, Mr. Silva represented appellant in an arraignment in Tulsa County on an information alleging three counts of First Degree Murder. One of these was for the murder of Ms. Hartzell.

Shortly after the arraignment, after he had been taken back to the Tulsa County Jail, appellant was informed by the authorities that he was going to be moved to Rogers County. At that time, appellant asked to see his attorney. An attempt was made to call Mr. Silva, but he could not be located. Appellant was then moved to Rogers County without having been afforded the opportunity to speak with his attorney.

On the morning of June 8, 1984, appellant was taken into the Rogers County Sheriff's office where video equipment was already set up. He was advised of his *Miranda* rights and did not request that his lawyer be present. He signed a waiver

to that effect. Appellant was then asked questions concerning the murder of Ms. Hartzell. He responded by giving a full confession. This confession was recorded on video tape and was subsequently shown to the jury.

The appellant objected to the admission of both confessions at trial. However, the trial court found that both confessions were made knowingly and voluntarily and thus, it overruled appellant's objections. In addition to several assignments of error raised by appellant in this appeal, he alleges that his objections to the admission of the confessions should not have been overruled, and the trial court's decision to allow the jury to consider them constituted fundamental error.

Upon review of this case, we have found the facts to be particularly egregious and troubling. Were we able to affirm, we would do so convinced that the appellant wholly deserved the punishment he received. However, it is the duty of this Court to determine whether the appellant received a fair trial in compliance with the mandates of the United States Constitution, the Oklahoma State Constitution and the laws of this State, not to decide the case based on our personal opinions of guilt or innocence. In applying the law to the facts of this case, we have no choice but to determine that he did not. We agree with the appellant that the video taped confession taken in Rogers County should not have been admitted into evidence because it was taken in violation of appellant's Fifth Amendment right to have counsel present during a custodial interrogation. Insofar as we have determined that this case must be reversed and remanded for a new trial because of this fundamental error, we deem it unnecessary to address appellant's other claims of error.

The United States Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), discussed the Fifth Amendment protection against compelled self-incrimination which provides the accused with the right to have counsel present at custodial interrogations. The Court in *Miranda* specifically noted the

importance of this right. "[W]ithout proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.*, 384 U.S. at 467, 86 S.Ct. at 1624. Although it is clear that the accused must be able to invoke the right to have counsel present at a custodial interrogation, it is also clear that the accused may waive the right provided the waiver is made voluntarily, knowingly and intelligently. *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612. The Supreme Court has determined that such waivers must be dealt with cautiously, and in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court formulated a rule designed to safeguard the rights of an accused who has asked for counsel.

In determining whether the appellant in this case invoked his right to counsel and whether he had validly waived the right to counsel when he gave the video taped confession in Rogers County, our analysis will focus on the procedural rules set forth in *Edwards*. In that case, the defendant was arrested, informed of his *Miranda* rights and questioned by police until he requested an attorney. The police then ceased questioning and the defendant contacted an attorney. The next day, police came to see the defendant again and informed him that they wanted to speak with him. After being apprised of his *Miranda* rights again, the defendant responded to police questioning implicating himself in the crime. The defendant's confession was used against him at trial and he was subsequently convicted. In its reversal of the case, the Supreme Court made very clear that the confession was inadmissible and constituted fundamental error because an accused who has invoked his right to have counsel present during custodial interrogation will not be deemed to have waived his constitutional right to counsel except upon a showing that certain conditions were met.

Although *Edwards* dealt specifically with requests for counsel made by an accused during a custodial interrogation, the Court also found that, "an accused … having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* 451 U.S. at 484–485, 101 S.Ct. at 1885. This is in direct accord with the holding in *Miranda* that "[i]f [the accused] indicates in any manner and *at any stage* of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612.

Further, the Supreme Court has found that the rationale employed in *Edwards* is applicable in other situations where an accused has requested counsel. For example, in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Court rejected the State's claim that *Edwards* should be applied only to representation in formal legal proceedings. They reasoned that waivers of constitutional rights are of such importance, that the Court should resolve any doubts in favor of protecting the constitutional claim. Therefore, questions of waiver regarding a defendant's request for counsel require a broad, rather than narrow interpretation. *Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409. *See also Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The Supreme Court has noted that the *Edwards* test sets forth a two part inquiry. *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). The first step requires a determination of whether the accused has actually invoked his right to counsel. *Smith*, 469 U.S. at 95, 105 S.Ct. at 492. If it is found that the accused did invoke his right to counsel, his responses to further questioning may be admitted into evidence *only* when the accused is found to have initiated the further discussions with the police *and* knowingly and intelligently waived the right that he had invoked. *Smith*, 469 U.S. at 95, 105 S.Ct. at 493.

■ Applying the *Edwards* test to the facts of the present case, it is clear that the appellant did invoke his right to counsel. It is not disputed by the State that appellant specifically asked to speak with his attorney when the Rogers County officials came to move him to Rogers County. Appellant's attorney, Pete Silva testified that he had told appellant he would be apprised of any future interrogations and that he would inform the appellant of any attempts to move him. Appellant testified that he asked to call his attorney when the Rogers County officials came to get him, but he was unable to reach Mr. Silva. In addition, the record reveals that a Tulsa County Deputy Sheriff, Robert McCarty, also testified that the appellant had asked to see his attorney at that time. It is not dispositive that appellant could not reach Mr. Silva when he attempted to call him. Rather, it is sufficient that the appellant clearly invoked his right to counsel by stating that he wished to speak to his attorney.

■ The next inquiry that we must make under the *Edwards* test is whether the appellant initiated the discussions with the police that took place after he had invoked his right to counsel. There is no indication from the record that he initiated any further discussions with the police after he attempted to contact his attorney. Edward Scott, a Rogers County deputy sheriff, testified that on the morning of June 8, 1984, he came into contact with the appellant because another deputy and the Sheriff brought the appellant into the Sheriff's office where they conducted an interview with him. In addition, the video taped confession clearly shows that after the appellant was read his *Miranda* rights, the Sheriff initiated the discussion by asking the appellant questions concerning the murder of Ms. Hartzell. This uncontradicted evidence supports the conclusion that the appellant did not initiate further discussions with the police after he had invoked his right to counsel, but rather indicates that the Rogers County authorities initiated the interrogation of the appellant which produced his video taped confession.

The State argues that the video taped confession was properly admitted because the admissibility of a confession is dependent upon whether it was given voluntarily. It cites *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) in support of its assertion that the totality of the circumstances must be considered in determining whether the confession was given voluntarily. However, this was the same argument that was rejected by the Supreme Court in *Edwards*. There, the Court specifically found that *Schneckloth* does not control this issue as it does not address the requirements for finding a valid waiver of the right to counsel, once that right has been invoked. *Edwards*, 451 U.S. at 483–84, 101 S.Ct. at 1884.

It was also the States contention that the confession was admissible because before appellant was questioned in Rogers County, he was advised of his *Miranda* rights and he signed a rights waiver form. However, the Supreme Court made very clear that this is not dispositive. "[T]he Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484, 101 S.Ct. at 1884–85. *See also Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

Our application of the *Edwards* test has shown that appellant did invoke his Fifth Amendment right to counsel and he did not initiate the further discussions with the police which resulted in his video taped confession. Therefore, we now conclude that since the required procedural safeguards were not followed, the video taped confession was taken in violation of appellant's Constitutional rights, and therefore, it was error for the trial court to allow it into evidence. The only further analysis that is necessary is a determination of whether this error requires reversal.

■ Although the appellant's statements in his first confession made in Tulsa County were much the same as those he made in the video taped confession in Rogers County, we cannot find that the Rogers County confession was merely cumulative or that it was harmless error for the trial court to admit it into evidence. The Supreme Court, in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), held that where there is constitutional error, if the prosecution can prove beyond a reasonable doubt that the error did not contribute to the verdict, the conviction may stand. *See also Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The State in this case has not argued that the video taped confession was harmless, nor could we find it to be so even if they had. We cannot speculate that the color video taped confession had no impact upon the jury and that it was not prejudicial. It is not clear that the jurors would not have imposed the death penalty had they not seen the video tape of the appellant stating that he knew that he would get a 'needle in the arm'. Further, we cannot speculate that the jurors did not consider the appellant's demeanor as portrayed on the video tape when they considered his proffered defense of insanity.

Therefore, upon finding that the video taped confession was taken in violation of appellant's fundamental, constitutional right to have counsel present at the custodial interrogation and upon finding that the error of showing the video tape at trial was not harmless, we must REVERSE and RE-MAND this case for a new trial.

LUMPKIN, J., concurs in result.

PARKS, P.J., LANE, V.P.J., and JOHNSON, J., concur.

LUMPKIN, Judge, concurring in result.

I concur in the Court's statement regarding the facts of this case and the duty of this Court to set aside personal opinions of guilt or innocence in ruling upon whether the Appellant has been afforded the rights set forth by constitutional and statutory mandates. In addition, I concur in the results reached by the Court in this case but disagree with the Court's application of the law to the facts presented.

The Court determines the Appellant's right to protection from compelled self-incrimination and right to have counsel present at custodial interrogations pursuant to the Fifth Amendment of the U.S. Constitution was violated and this violation is the causation of the reversal and remand for new trial. The Court fails to make the distinction as to the rights afforded under the Federal Constitution's Fifth Amendment and Sixth Amendment, and when those rights are activated in the prosecution process. The facts reveal the interrogation at issue in this case occurred after Appellant's initial appearance, and after he requested and received court appointed counsel. In addition, his attorney had an agreement with the District Attorney's office that Appellant would not be questioned without his attorney being present. Prior to being transported to Rogers County Appellant asked to see his attorney but when the attorney could not be contacted he was removed without being allowed that opportunity.

The U.S. Supreme Court was confronted with this same type of problem in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The parties in that case had also sought to address the factual issues through application of Fifth Amendment principles. The Court stated:

[t]here is no need to review in this case the doctrine of *Miranda v. Arizona,* a doctrine designed to secure the constitutional privilege against compulsory self-incrimination, (citation omitted). It is equally unnecessary to evaluate the ruling of the District Court that William's self-incriminating statements were, indeed, involuntarily made. (citation omitted) For it is clear that the judgment before us must in any event be affirmed upon the ground that Williams was deprived of a different constitutional right—the right to the assistance of counsel.

*Id.* 430 U.S. at 398, 97 S.Ct. at 1239.

This right to counsel under the Sixth Amendment attaches at the time that judi-

cial proceedings have been initiated against a person. *Id.* The standard to be applied in determining the question of waiver of this Sixth Amendment right is "that it was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023." *Id.,* 430 U.S. at 405, 97 S.Ct. at 1242. The Court in *Brewer* held that under the facts of the case the defendant did not waive his rights under the Sixth and Fourteenth Amendments. The defendant in *Brewer,* like Appellant herein, had been arraigned on the charge, and requested and received appointment of an attorney.

The U.S. Supreme Court further defined the Sixth Amendment right to counsel in *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The Court applied the decision in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and held that confessions obtained from the defendants at police-initiated interrogations, after they had requested at their arraignment that counsel be appointed for them but before they had the opportunity to consult with counsel, should be suppressed as having been obtained in violation of their right to counsel under the Sixth Amendment of the Federal Constitution and any waiver of that right for the police interrogation was invalid. *Id.* 475 U.S. at 636, 106 S.Ct. at 1411.

Thus, the question of whether a confession was made knowingly and voluntarily is not relevant under the present facts of a police initiated interrogation after the Appellant was initially arraigned and exercised his right to counsel. The [initial appearance] signals "the initiation of adversary judicial proceedings" and thus the attachment of the Sixth Amendment. *U.S. v. Gouveia,* 467 U.S. 180, 187–188, 104 S.Ct. 2292, 2296–2298, 81 L.Ed.2d 146 (1984). The issue of the advice of rights, coupled with a knowing and voluntary waiver, is controlling in the application of the Sixth Amendment right to counsel only when a defendant has not exercised his right to counsel. See *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

Prior to the taking of the invalid video taped confession on June 8, 1984, the police investigators had secured two separate valid confessions on June 3 and 4, and Appellant took the officers to the location of the body in Rogers County. However, the validity of the prior confessions cannot justify the Sixth Amendment violations, nor can those confessions dilute the impact of the video taped confession to harmless error. While it might be popular to attempt to disregard or justify a violation of Appellant's Sixth Amendment rights under the Federal Constitution or rights granted under Article 2, § 20, of the Oklahoma Constitution; based on the factual context of this case, the luxury of popularity has never been afforded to those vested with the responsibility of enforcement of constitutional rights conferred upon all citizens of this great republic. Therefore, the only decision available to this Court is to vacate the previous judgment and sentence and remand the case for a new trial.