**John Charles ALLEN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–1159.**

Court of Criminal Appeals of Oklahoma.

May 6, 1994.

James O. Braly, Durant, Trial Counsel and William H. Luker, Asst. Appellate Indigent Defender, Norman, Appellate Counsel, for appellant.

Larry G. Grant, Durant, Trial Counsel, and Susan B. Loving, Atty. Gen. of Oklahoma and Dan Connally, Asst. Atty. Gen., Oklahoma City, Appellate Counsel, for appellee.

## OPINION

STRUBHAR, Judge:

Appellant, John Charles Allen, was charged with First Degree Murder, in violation of 21 O.S.1991, § 701.7, in the District Court of Bryan County, Case No. CRF–89–112. The State filed a Bill of Particulars alleging two aggravating circumstances; that the murder was especially heinous, atrocious, or cruel, and that there existed a probability that Appellant would commit criminal acts of violence which would constitute a continuing threat to society. The jury found Appellant guilty of the crime charged and found that both aggravating circumstances had been proven beyond a reasonable doubt. Appellant was sentenced to death. It is from this judgment and sentence that Appellant perfected his appeal to this Court.

On Monday, January 25, 1988, eighty-nine year old Harvey Earl Rice was found dead in the kitchen of his home in rural Bryan County, Oklahoma. He had been shot twice; once in the back of his head and once in his chest.

On January 27, 1988, Appellant was arrested in Austin, Texas and charged with crimes wholly unrelated to the case at bar. He was subsequently convicted in Texas of Kidnapping and Aggravated Robbery With a Deadly Weapon and was sentenced to two life sentences which he was serving until March 27, 1989, when he was delivered to the District Court of Bryan County pursuant to the provisions of the Interstate Agreement on Detainers Act. Bryan County had sought temporary custody of Appellant to pursue Forgery charges against him in Case No. CRF–88–29. However, on April 10, 1989, the forgery charges were dismissed on motion of the district attorney. Appellant was not immediately returned to Texas, but remained in the custody of Bryan County. On April 13, at approximately 10:00 p.m., Appellant gave a

statement to Bryan County officials implicating himself in the commission of the crime at bar.[1]

In this statement, which was tape recorded, Appellant said that on the day Rice was killed, Appellant was sitting in his camp, a vacant house in a wooded area, getting ready to cook some food when John Victor May came to his camp. The two smoked a joint and discussed how to get some money so they could go party that night. Appellant suggested that he could sell some tools to Harold Speed for some cash. After they finished smoking the joint, Appellant walked to Speed's shop but it was closed so he walked back to the camp. At that time May told Appellant that he knew an "old boy" in Liberty who had some money on him. Appellant realized that May was talking about robbing that person. He told May it wouldn't be very hard to get the money, "what you have (sic) is knock him out and tie him up." May responded he didn't want to hurt the person if he didn't have to. Appellant replied, "well, you know, which ever way it goes when we get there you know." May told Appellant he and another person named Jason had been watching the old man for a while. Appellant confirmed that this person was Jason Stadum.

May told Appellant he was to meet Stadum in Liberty at 3:00 p.m. that day. At about 2:25 p.m. the two left the camp and started walking toward Liberty. A man in a pickup gave them a ride to Kemp. Another person driving a blue and white Chevy gave them a ride into Liberty and dropped them off at the Liberty store at about 2:40 p.m. They spotted Stadum's car parked about a quarter mile from Rice's house. Stadum had been watching Rice's house but he had not seen anyone around. May got in the front seat of the car and sat in the middle and Appellant sat on the passenger side. There was a gun in the car by Stadum which May took possession of when he got in the car. Appellant stated it did not seem funny to him that there was a gun in the car because it is common to take a knife or a gun when committing a robbery.

Stadum drove the car into the driveway and Rice came out of his house as the three men exited the vehicle. May had the gun when he got out of the car and he was standing behind Appellant. Rice walked toward them, hesitated, and then started to turn around when Appellant heard a shot. He turned and saw May standing with the .22 in an aiming position. Rice, who had been hit in the back of the head, fell down, tried to get back up, and then went limp. Appellant and Stadum went over to him, picked him up and carried him up on the front porch where May shot Rice again, this time in the chest at close range. Stadum and Appellant carried Rice around the house into the kitchen through the back door. Appellant did not want to drag him through the living room because he did not want to get blood all over the house; he did not want people to know something was wrong if they looked in the house.

When they got Rice to the back of the house, Appellant and Stadum started arguing about what to do with him. While they were doing this, May located Rice's wallet inside the house and divided the money in the wallet between all three of them. They each received around $115.00. Appellant went back to the car and the other two came out about a minute and a half later. Stadum dropped Appellant at Hendrix and Appellant told them they were not going to party that night because things had not gone right that day. Appellant wanted to pack his stuff and leave as soon as possible. He stayed at a church in Archille that night and then headed back to camp the next morning. David Fletcher saw him and gave him a ride to a road near his camp.

The brief filed by Appellant in this case recites nineteen propositions of error. Each of these have been reviewed, but only three have been addressed in this opinion. The error which we find to be most meritorious is raised in Appellant's second proposition, wherein he argues he was deprived of effec-

---

**1.** At the close of the statement Appellant acknowledged that he had given the statement voluntarily and of his own free will.

tive assistance of counsel because trial counsel's loyalties to Stadum created a conflict of interest that denied him effective assistance of counsel. Thus, Appellant submits his conviction is constitutionally unsound.

The record before this Court reveals that defense counsel, James O. Braly, was initially appointed to represent Appellant in the forgery case which provided the basis for Appellant's return to Bryan County. After Appellant gave Bryan County authorities his statement implicating Stadum and May in the commission of the Rice homicide, Stadum and May were jointly charged with First Degree Murder. Appellant was not charged in conjunction with the Rice homicide at this time, and the forgery charges against him were subsequently dropped. When this occurred, Braly was no longer representing Appellant, but was appointed to represent Stadum. During the time he represented Stadum in this matter, Braly urged the prosecution to dismiss the charges against his client, which occurred on May 4, 1989. On June 6, 1989, Appellant was charged with First Degree Murder for the Rice homicide. The following day, on June 7, 1989, Braly was appointed, by the same judge, to represent Appellant against this charge.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court addressed the Sixth Amendment requirement that every criminal defendant be afforded effective assistance of counsel. The Court noted that, "[r]epresentation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interests." *Id.*, 466 U.S. at 688, 104 S.Ct. at 2065. The duty of loyalty was further addressed by the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978), wherein it stated, "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." The Court also noted that a conflict may prevent an attorney from arguing "the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." *Id. See also U.S. v. Martin*, 965 F.2d 839 (10th Cir.1992).

■ While conflict of interest cases often involve circumstances where counsel has represented codefendants with conflicting interests at a single trial, the right to the assistance of counsel free of conflicting interests is not limited to such cases. Rather, it extends to *any* situation in which a defendant's counsel owes conflicting duties to the defendant and some other person. *Wood v. Georgia*, 450 U.S. 261, 268–72, 101 S.Ct. 1097, 1101–03, 67 L.Ed.2d 220 (1981); *United States v. Winkle*, 722 F.2d 605, 609–10 (10th Cir.1983). The *Rules of Professional Conduct*, Rule 1.9, Conflict of Interest: Former Client, recognize the ongoing duty of loyalty to former clients and the potential conflict of interest created thereby. This section provides as follows:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

■ The Supreme Court noted in *Strickland* that while prejudice is presumed in certain Sixth Amendment contexts, there is not a per se rule of prejudice for conflicts of interest. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. Where there is an actual conflict of interest and the trial court permits or requires joint representation over timely objection, reversal will be warranted absent a showing of prejudice. *Holloway*, 435 U.S. at 488–91, 98 S.Ct. at 1180–82. Similarly, in order to prevail on an ineffective assistance of counsel claim based upon conflict of interest, a defendant who raised no objection at trial need not show prejudice, but "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 466 U.S. 335, 349–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980). However, it is axiomatic that a defendant who did not know of a conflict cannot be held

to a standard requiring him or her to have objected to such conflict.[2]

■ Turning to the case at bar, we find that defense counsel's representation of Appellant after his previous defense of Stadum's interests in the same matter gave rise to an actual conflict of interest. Even though the defendants were not represented at the same time, Mr. Braly clearly owed both men a duty of loyalty. In order to defend Stadum against the charge of First Degree Murder, Braly had to advance the argument that Appellant's statement was untrue insofar as it concerned Stadum's involvement in the Rice homicide. Further, Braly's duty of loyalty to Stadum did not cease to exist after charges were dismissed against Stadum; nothing barred the district attorney from recharging Stadum in this matter. Conversely, Braly's position, as Appellant's attorney, required him to argue the evidence in the manner most favorable to Appellant; that Stadum, May and Appellant were all involved in the homicide, but that Appellant was the least culpable of the three men. We find this situation constituted an actual conflict of interest because during the course of the representation, the defendants' interests were divergent with respect to a material factual issue, that being the degree of truth imputed to Appellant's statement. Thus, effective representation of both clients required conflicting courses of action.[3]

The record in this case clearly reveals that there was successive representation of codefendants with conflicting interests. Although defense counsel did not represent Appellant and Stadum at the same time, he owed a continuing duty of loyalty to Stadum during the time he represented Appellant. While Appellant could have elected to have Braly represent him despite the conflict, there is no

indication from the record that the conflict was ever disclosed to him. Accordingly, Appellant was not only precluded from waiving his right to have counsel free from conflicting interests, he was also effectively precluded from lodging a timely objection. Accordingly, we have not required Appellant to show an adverse effect from the actual conflict of interest. Rather, under the specific circumstances of this case, we presume prejudice therefrom, and hold that reversal is warranted.

■ Although we have deemed it necessary to reverse this case based upon the conflict of interest served by Appellant's trial counsel, we find two other propositions of error significant enough to warrant comment. In proposition four, Appellant argues that the trial court committed fundamental error by failing to give, sua sponte, an *Enmund* instruction. The United States Supreme Court held in *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed.2d 1140 (1982), that a defendant cannot receive a sentence of death for murder committed by an accomplice unless the defendant knew the killing would take place, knew lethal force would be used, killed, or attempted killing. Such punishment would violate the Eighth Amendment. This ruling was somewhat modified by the Supreme Court in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), wherein it held that a defendant who was a major participant in the felony committed, who displayed reckless indifference to human life, may be sufficiently culpable to receive the death penalty. This Court, has indicated in prior decisions that where the evidence warrants, it is proper to instruct the jury on the law of *Enmund* to determine whether the defendant may be assessed the death penalty.[4]

2. The record is silent as to whether Stadum was advised of Braly's appointment to represent Appellant. However, trial counsel's affidavit which was supplemented to the record reveals specifically that counsel did not recall advising Appellant of his prior representation of Stadum.

3. Justice Marshall, in his separate opinion to *Cuyler*, set forth the following criteria to establish actual conflict, "[t]here is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do di-

verge with respect to a material factual or legal issue or to a course of action." *Cuyler*, 466 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3 (Marshall, J., concurring in part and dissenting in part).

4. In *Williamson v. State*, 812 P.2d 384 (Okl.Cr. 1991), this Court specifically approved of an *Enmund* type jury instruction which enabled the jury to give individualized consideration to the defendant's culpability. Further, this Court held in *Stiles v. State*, 829 P.2d 984 (Okl.Cr.1992), that the requested *Enmund* instruction was properly

The facts of the present case are such that an *Enmund/Tison* instruction would have been warranted. The circumstances surrounding the killing and the evidence of Appellant's participation in the commission of the crime make this case a classic example of the type of situation to which the considerations of *Enmund* and *Tison* should be applied.

Finally, we address Appellant's sixth proposition wherein he argues that the failure of the information to state the facts which constituted the alleged robbery resulted in fundamental reversible error. Appellant complains in this proposition that the information was not sufficient to charge him with felony murder because it did not allege facts to support all elements of the underlying felony of Robbery With a Deadly Weapon. We agree that the charging instrument in the instant case tests the limits of the applicable law.

The most recent case by this Court to specifically and thoroughly address the issue of what constitutes a sufficient information is *Miller v. State,* 827 P.2d 875 (Okl.Cr. 1992). In this case, this Court, based upon historical precedent, found that "an Information which does not recite facts to allege every material element of the crime charged fails to confer subject matter jurisdiction on the district court." *Id.,* 827 P.2d at 879. In so holding, the Court basically rejected the argument of the State, which has also been advanced by the State in the present case, that an information is sufficient so long as it sufficiently apprises the defendant of what he must be prepared to meet. This, it was noted, is only one part of the two pronged test. The other prong requires that the information contain facts which allege every element of the offense to be charged. *Id.,* 827 P.2d at 877. Further, an information charging a defendant with felony murder must recite facts to allege every element of the First Degree Murder statute, 21 O.S. 1991, § 701.7(B), including facts to allege every element of the underlying felony. *See Jefferson v. State,* 675 P.2d 443 (Okl.Cr.1984);

*Morris v. State,* 603 P.2d 1157, 1161 (Okl.Cr. 1979).

In light of the foregoing discussion, we find that Appellant's Judgment and Sentence must be REVERSED and REMANDED to the district court for a NEW TRIAL.

JOHNSON, V.P.J., and LANE and CHAPEL, JJ., concur.

LUMPKIN, P.J., concurs in results.

---

withheld because the facts of the case did not warrant it. Finally, in *Moore v. State,* 736 P.2d 161 (Okl.Cr.1987), the jury instruction held the jury to an even stricter standard than *Enmund* requiring them to find a higher degree of culpability before they could assess the death penalty.