**Darrin Lynn PICKENS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–90–1297.**

Court of Criminal Appeals of Oklahoma.

Nov. 14, 1994.

---

J. Michael Busch, W. Creekmore Wallace, II, Sapulpa, at trial, and William H. Luker, Deputy Appellate Indigent Defender, Norman, on appeal, for appellant.

Don I. Nelson, Asst. Dist. Atty., Sapulpa, at trial, and Susan Brimer Loving, Atty. Gen. of Oklahoma and A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, on appeal, for appellee.

## OPINION

CHAPEL, Judge:

Darrin Lynn Pickens was tried by jury in the District Court of Creek County in Case No. CRF–90–66 before the Honorable Donald D. Thompson. He was convicted of First Degree Murder in violation of 21 O.S.1981, § 701.7, Feloniously Carrying a Firearm (21 O.S.1981, § 1283) and Robbery With Firearms After Former Conviction of Two or More Felonies (21 O.S.1981, § 801). The jury found that 1) the murder was especially heinous, atrocious, or cruel; 2) Pickens had previously been convicted of felonies involving violence; 3) Pickens committed the murder for the purpose of avoiding or preventing lawful arrest or prosecution; and 4) there was a probability Pickens would constitute a continuing threat to society. Pickens was sentenced to death, ten years, and life imprisonment, respectively. He has perfected his appeal of these convictions, raising twenty-one propositions of error. We reverse and address only those propositions containing error in the pretrial and guilt/innocence stages.

During the early morning hours of February 4, 1990, Pickens robbed the Mr. Quick 21 convenience store in Sapulpa. After the robbery he shot the clerk, Tommy Lee Hayes, four times. A customer found Hayes' body between 2:00 and 3:00 a.m. on February 4. Three .38 caliber unjacketed lead bullets were found at the scene, and two more were recovered from the body. Tulsa police arrested Pickens on other charges on February 9.[1] They found a snubnose .38 caliber revolver in Pickens' car. Ballistics tests connected the revolver to the Tulsa crimes but could not confirm it as the weapon in the Sapulpa crime. When Pickens was interviewed and arraigned on the Sapulpa charges on March 9, 1990, he confessed.

In Proposition I Pickens contends that his confessions were inadmissible because he did not waive his Fifth and Sixth Amendment rights to counsel. In Subproposition A Pickens challenges the admissibility of his March 9, 1990 videotaped confession on Sixth Amendment grounds.[2] Pickens was brought from Tulsa to the Creek County police department on March 9, and, after being given *Miranda* warnings, interviewed from approximately 11:00 a.m. until 12:15 or 12:30 p.m.[3]

---

1. On February 8, 1990, Pickens robbed a Tulsa Circle K convenience store, killing the clerk by shooting her four times. On February 9, Pickens robbed another Tulsa Circle K and shot the clerk three times, but failed to kill him. Pickens was arrested while fleeing from the scene of that crime. Pickens was convicted and sentenced to death and imprisonment on charges based on these events, and the conviction was affirmed in *Pickens v. State,* 850 P.2d 328 (Okl.Cr.1993) [*Pickens*–I or Tulsa case]. Although the crime in this case preceded the Tulsa crimes, the Tulsa trial was held shortly before the Creek County trial. Formal sentencing in both cases was delayed until completion of each trial.

2. Pickens brought this issue before the trial judge during argument in the *Jackson–Denno* hearing: "The only other factor that might be of importance to the Court is this interview took place immediately after his initial arraignment here in Creek County." The prosecutor responded that the timing of the interview was irrelevant, and the trial judge did not appear to rule on the

issue. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) established a defendant's right to an *in camera* hearing on the voluntariness of his confession.

3. When Pickens was brought to Creek County on March 9, the Tulsa Public Defender office represented him in his Tulsa case. The Creek County officers were aware of this representation. Pickens claims in Subproposition B that his waiver of *Miranda* rights during the first interview was vitiated by the officers' failure to tell him he could have his Tulsa attorney present, or to contact the Tulsa attorney. In *McNeil v. Wisconsin,* 501 U.S. 171, 174–83, 111 S.Ct. 2204, 2207–2211, 115 L.Ed.2d 158 (1991), the Supreme Court held that invocation of the Sixth Amendment right to counsel at arraignment on one charge did not suffice as an invocation of the Fifth Amendment right to counsel during interrogation on other unrelated charges. That would appear to cover the situation here: Pickens' invocation of his Sixth Amendment right to counsel,

After the interview Pickens was escorted to lunch, then transported to court and arraigned on the Creek County charges about 1:00 p.m. He then returned to the police department, where he confessed to the Sapulpa crimes on videotape in a second interview that began about 1:30 p.m. Before beginning the videotaped confession, Creek County officers showed Pickens the earlier *Miranda* form and asked him if that was what he signed that morning.

Although the State characterizes the day's events as one long confession, it is clear that Pickens was interviewed twice.[4] In the first, before arraignment, Pickens confessed to the robbery and murder, but some details did not quite correspond with the crime scene. The second interview was the videotaped confession, in which Pickens admitted more damaging facts. At trial the State relied on this second interview, which was played for the jury.

■ The Sixth Amendment right to counsel attaches at arraignment, and a defendant has a right to counsel at any postarraignment questioning.[5] To prove a valid

waiver of that right, the State must prove an intentional relinquishment or abandonment of a known right or privilege.[6] The court minutes, the only record of the Creek County arraignment, state in full:

"Deft. present. Copy of C & I given deft. C & I read to deft. in open Court by Mike Loeffler, Asst. D.A. Deft. advised of his rights. Preliminary hearing set May 2, 1990 at 1:30 p.m. Court enters a plea of Not Guilty for deft. No bond will be set." (OR 7)

This note indicates Pickens was advised of his rights, and, absent any indication in the record otherwise, this Court must assume the trial court correctly included the right to counsel. However, a trial judge is required to make an extensive record regarding a defendant's waiver of counsel during court proceedings.[7] No such record appears here. This Court will not presume waiver of Pickens' right to counsel from a silent record.[8] Nothing in the record suggests Pickens waived his right to counsel at arraignment.[9] On March 13, 1990, the arraignment court

---

as evidenced by appointment of the Public Defender in Tulsa, would not invoke his Fifth Amendment right to counsel when interrogated in Creek County on these charges.

4. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

The State appeared to concede this during argument in the *Jackson–Denno* hearing at trial: "[T]hat was the purpose of the initial interview and the subsequent taped interview...."

5. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Battenfield v. State,* 816 P.2d 555, 561 (Okl.Cr.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).

6. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1038); *Walker v. State,* 795 P.2d 1064 (Okl.Cr.1990).

7. *Swanegan v. State,* 743 P.2d 131 (Okl.Cr.1987).

8. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Day v. State,* 784 P.2d 79, 82 (Okl.Cr.1989).

9. The State claims this Court can infer a valid waiver from Pickens' presumed familiarity with both *Miranda* rights and his right to counsel, noting that Pickens had confessed to the Tulsa

crimes and that he refused to sign a *Miranda* waiver in Tulsa but signed one in Creek County. This argument is contrary to case law and has no merit. The State further argues that Pickens admitted during the *Jackson–Denno* hearing that he had requested neither Creek County counsel nor his Tulsa attorney. A review of the record shows the trial court had asked counsel whether Pickens referred in any way in his videotaped statement to the Tulsa proceedings or his Tulsa court-appointed attorney. Counsel replied that Pickens had not made any such references and that, in the initial interview, Pickens did not specifically advise officers about the Tulsa proceedings but did answer their questions about that case. This exchange does not amount to an acknowledgement of waiver of counsel, as the State contends. Finally, the State cites to *Pickens v. State,* supra, in which the Creek County videotape was admitted to prove the continuing threat and avoiding arrest aggravators, as res judicata. *Pickens* does not reach the Sixth Amendment issue presented here. In dicta, that opinion states "[T]he interview occurred while Appellant awaited arraignment on the Creek County charges." This is clearly belied by the actual record in this case, which was not before the *Pickens* court. The opinion in *Pickens* was confined to whether the videotaped confession was admissible in the second stage of that case and is not a final adjudication on the admissibility of the videotape in the guilt/innocence stage here.

issued an order appointing counsel for Pickens in Creek County. Although this is dated four days after Pickens' arraignment, there were no intervening court dates and the logical inference is that arrangements for appointment of counsel were made during or as a result of the March 9 arraignment. This further indicates that Pickens did not waive counsel at arraignment.

■ Although Pickens' right to counsel had attached before the 1:30 p.m. videotaped interview, he was not again advised of his *Miranda* rights, nor was any effort made to determine whether he understood he had a right to have counsel present during questioning or wanted counsel in that interview. A defendant may waive his Sixth Amendment right to counsel after the right attaches.[10] Here, nothing in the record indicates that Pickens did so, or was afforded the opportunity to do so.[11]

■ Admission of the videotaped confession was not harmless error. Harmless error is applied to illegally obtained confessions only where the State demonstrates beyond a reasonable doubt that the unconstitutional confession did not contribute to the conviction.[12] Although the State introduced into evidence transcripts of the partially tape recorded first interview, the State emphasized the videotaped confession, played it for the jury, and referred to it almost exclusively in first stage argument. No physical evidence links Pickens to the scene of the crime: no fingerprints, blood stain evidence, or ballistics evidence positively connect Pickens with Tommy Lee Hayes and Mr. Quick 21. The videotape includes admissions of fact which match the crime scene but were absent from the tape recorded interview. This Court has

held that admission of a color videotaped defendant's statement was not harmless error even though it substantially matched an earlier statement, as the Court would not speculate regarding the impact of the' color videotape on the jury or its part in the ultimate sentence of death.[13] Pickens' videotaped confession was clearly obtained in violation of his Sixth Amendment right to counsel and should not have been admitted. The confession comprised most of the State's case against Pickens, and the State has not shown beyond a reasonable doubt that its admission did not contribute to Pickens' conviction and that the error was not harmless.

■ In Proposition IV Pickens argues that the trial court committed fundamental error in failing to instruct on lesser included offenses of second degree murder and first degree manslaughter after instructing on the defense of voluntary intoxication. Although the record does not indicate Pickens requested instructions on the lesser included offenses of second degree murder and first degree manslaughter, the trial court should give such instructions whether requested or not if they are warranted by the evidence.[14] The Supreme Court has held that in death cases, the jury must be instructed on lesser included noncapital offenses supported by the evidence, in order to give the jury a viable option between acquittal and a death penalty offense.[15] No such instructions were given.

■ Based on the evidence at trial indicating Pickens had smoked PCP immediately before the crime the trial court instructed the jury on voluntary intoxication. The propriety of the voluntary intoxication instruc-

10. *Curliss v. State*, 692 P.2d 559, 561 (Okl.Cr. 1984).

11. The officers' blatant disregard for Pickens' Sixth Amendment rights must be traced to the Creek County District Attorney. It is the county District Attorney's responsibility to inform area police that the right to counsel attaches at arraignment and counsel must be present for any further questioning unless a valid waiver of counsel is on record.

12. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991); *Chap-*

*man v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

13. *Walker*, 795 P.2d at 1069.

14. *Bennett v. State*, 743 P.2d 1096, 1098 (Okl.Cr. 1987); *Funkhouser v. State*, 721 P.2d 423, 424–25 (Okl.Cr.1986).

15. *Beck v. Alabama*, 447 U.S. 625, 633–645, 100 S.Ct. 2382, 2387–2393, 65 L.Ed.2d 392 (1980); *Schad v. Arizona*, 501 U.S. 624, 644–48, 111 S.Ct. 2491, 2504–05, 115 L.Ed.2d 555 (1991); *Dawson v. State*, 647 P.2d 447 (Okl.Cr.1982).

tion is not at issue and this Court will not substitute its judgment for that of the trial court. Voluntary intoxication is not a defense to homicide, but may be a defense to first degree murder if a defendant is so intoxicated he cannot form the specific intent required for malice.[16] This Court has consistently held that a court should instruct on lesser included offenses where a defendant may be guilty of homicide, and where intoxication might prevent a defendant from forming specific intent.[17] These cases compel instructions on the non-capital lesser included offenses which do not have a malice component. Failure to instruct on the lesser included noncapital offenses was not harmless because even if the jury found Pickens' PCP intoxication prevented him from forming the specific intent necessary for murder, it had no option but to acquit or convict Pickens of first degree murder.

Pickens claims in Proposition V that the information did not clearly charge him with either malice or felony murder. The information for Count I stated:

"That said defendant in the County and State aforesaid, on the day and year aforesaid [February 4, 1990], did unlawfully, willfully and feloniously, without authority of law, and with a premeditated design to effect the death of one TOMMY LEE HAYES, the said DARRIN LYNN PICKENS aka DARREN LYNN PICKENS did while being then and there engaged in committing the crime of Robbery with a Dangerous Weapon did kill the said TOM-

MY LEE HAYES by means of shooting, causing mortal wounds in the body of the said TOMMY LEE HAYES, from which mortal wounds the said TOMMY LEE HAYES did languish and die."

The law in effect at the time of the offense and trial was 21 O.S.Supp.1989, § 701.7, which separates first degree murder into Section A, malice murder, and Section B, felony murder.[18] The elements for malice and felony murder differ under this statute. Malice murder is a specific intent crime requiring malice aforethought. Felony murder is not a specific intent crime and must be committed while in the commission of one or more enumerated felonies. The term "premeditated design" is not used, and appears nowhere in the jury instructions.

An information should state every material element of the crime charged sufficiently to apprise a defendant of the charges against which he must defend himself.[19] Sufficiency of the information is fundamental and may be raised for the first time on appeal.[20] An information must cite facts to allege every material element of the crime charged and sufficiently apprise a defendant of what he must be prepared to meet.[21] The information here appears to allege some elements of malice murder and some elements of felony murder. The element of "malice aforethought" is not included; some reference to "malice aforethought" is necessary for a sufficient charge under § 701.7(A).[22] As this information does not adequately allege "malice aforethought" it misses the cru-

16. See, e.g., Crawford v. State, 840 P.2d 627, 638 (Okl.Cr.1992); Lamb v. State, 767 P.2d 887, 889–90 (Okl.Cr.1988); Biggerstaff v. State, 491 P.2d 345, 350–51 (Okl.Cr.1971).

17. See, e.g., Hogan v. State, 877 P.2d 1157 (Okl.Cr.1994) (opinion and Chapel, J., dissent); Fontenot v. State, 881 P.2d 69 (Okl.Cr.1994); Hooks v. State, 862 P.2d 1273, 1280–81 (Okl.Cr.1993); Thomas v. State, 792 P.2d 1195 (Okl.Cr.1990); Oxendine v. State, 335 P.2d 940, 944 (Okl.Cr.1958).

18. The Creek County District Attorney's office is responsible for the language in the information, which is similar to the former Oklahoma murder statute, 21 O.S.Supp.1973, § 701.1, declared unconstitutional by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

19. Dunn v. United States, 442 U.S. 100, 106–107, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979).

20. Miller v. State, 827 P.2d 875, 879 (Okl.Cr. 1992).

21. Allen v. State, 874 P.2d 60, 65 (Okl.Cr.1994); Miller, 827 P.2d at 877.

22. The State cites Holloway v. State, 602 P.2d 218 (Okl.Cr.1979), for its claim that "premeditated design" is sufficient. Holloway did not approve that language. Holloway held that the proper test for sufficiency of an information is whether the information contains a statement of facts constituting the offense in ordinary concise language, so a normal person will know what was intended, whether a defendant was actually misled, and if the conviction would put a defendant in double jeopardy for a second trial of the offense. Holloway, 602 P.2d at 220. However, Holloway was decided prior to the test enunciated in Miller, supra. Revilla v. State, 877 P.2d 1143 (Okl.Cr.1994).

cial element of malice murder. Some elements of felony murder are included without alleging all the elements of the underlying felony. An information intended to charge a defendant with felony murder must recite facts to allege every element of the underlying felony.[23]

▮ The allegations going to felony murder cannot be dismissed as "surplus"; although the jury was instructed only on malice murder, the State vigorously argued the robbery and shooting, bolstering the emphasis on felony murder apparent in the indictment. Nor should the State be allowed to use the allegations in Count III, Robbery with Firearms, to support the incomplete felony murder charge in Count I. It is error to combine different theories or offenses in one count.[24] Taken as a whole, the Information does not appear to allege each element of first degree murder under malice, felony murder, or both, as required by *Miller*.

Despite the fact that we do not discuss the second stage of trial, we must reach that part of Picken's Proposition XIV in which he complains of the trial court's instruction on the heinous, atrocious and cruel aggravating circumstance. This Court has determined that aggravator is constitutional if limited to crimes where the death of the victim was preceded by torture or serious physical abuse.[25] The trial court gave the standard instruction, OUJI–CR 436, BUT added the following paragraph at the end:

▮ "In order for you to consider the statutory aggravating circumstance that the murder was especially heinous, atrocious, or cruel you must first unanimously find that the victim's death was preceded by torture or serious physical **harm**." (O.R. 238, emphasis added)

This Court does not condone and has never accepted the phrase "serious physical harm" as a proper limiting construction, but has

emphasized the use of "serious physical abuse".[26]

As a result of the errors identified in the guilt/innocence stage of the trial this case is **REVERSED** and **REMANDED** for **NEW TRIAL.**

JOHNSON, V.P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, P.J., concurs in result.

LUMPKIN, Presiding Judge concurring in results:

I concur in the results reached by the Court in this case. However, I continue to adhere to the interpretation of 22 O.S.1991, § 401 *et seq.*, regarding sufficiency of the information as set forth in my separate opinion in *Miller v. State*, 827 P.2d 875, 879 (Okl.Cr.1992) (Lumpkin, V.P.J., Concur In Part/Dissent In Part).

---

**23.** *Allen*, 874 P.2d at 65.

**24.** *Schad*, 501 U.S. at 631–33, 111 S.Ct. at 2497; *Allison v. State*, 675 P.2d 142, 156 (Okl.Cr.1983) (Cornish and Brett, J.J., specially concurring); *Davis v. State*, 354 P.2d 466 (Okl.Cr.1960).

**25.** *Stouffer v. State*, 742 P.2d 562, 563 (Okl.Cr. 1987) (Opinion on Rehearing), cert. denied, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

**26.** See, e.g., *Hooks*, 862 P.2d at 1282; *Clayton v. State*, 840 P.2d 18, 31 (Okl.Cr.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Stafford v. State*, 832 P.2d 20, 23 (Okl.Cr.1992); *Rojem v. State*, 753 P.2d 359, 369 (Okl.Cr.1988), cert. denied, 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).